**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Erie COVID-19 Business Interruption Protection Insurance Litigation | MDL No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
<u>TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. §1407</u>**

**I.    <u>INTRODUCTION</u>**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Laser Spa of Rochester, LLC ("Laser Spa"), Sulimay's Hair Design Inc. ("Sulimay's"), LA Campagna Inc. ("La Campagna"), Close Enterprises Inc. ("Close"), High Tech Hair LLC ("High Tech Hair"), Capucinno Pizzeria Ristorante T/A LaVilla ("LaVilla"), and Rose Glam Hair Studio, LLC ("Rose Glam") (collectively, "Movants"), respectfully submit this brief in support of their Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407. Movants are plaintiffs in five lawsuits, four of which involve class claims, brought against the Erie Insurance Group and related insurers (collectively, "Erie Insurance")[1] that are currently pending in three separate federal judicial districts: the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the Western District of New York.[2]

---

[1] The term "Erie Insurance" includes, for purposes of this Motion, the Erie Insurance Group, Erie Insurance Company, and Erie Insurance Exchange, because these are the named Erie Insurance defendants in Movants' cases. Additional Erie-related entities—Erie Insurance Company of New York, Erie Indemnity Company, and Erie Insurance Property & Casualty Company—are named as defendants in other actions. *See* note 3, *infra*.

[2] *See Laser Spa of Rochester, LLC, doing business as Spitale Laser Spa Salon v. Erie Insurance Company*, Case No. 6:20-cv-06308 (W.D.N.Y.); *Sulimay's Hair Design Inc. individually and on behalf of all other similarly situated v. Erie Insurance Exchange*, Case No. 2:20-cv-02731 (E.D. Pa.); *LA Campagna Inc. D/B/A LA Campagna Ristorante, on behalf of itself and all others similarly situated v. Erie Insurance Group*, Case No. 2:20-cv-02689 (E.D. Pa.); *Close Enterprises Inc. d/b/a Close Auto Sales on behalf of itself and all others similarly situated v. Erie Insurance Group AKA Erie Insurance Exchange*, Case No. 1:20-cv-00147 (W.D. Pa.); *High Tech Hair LLC and Capucinno Pizzeria Ristorante T/A LaVilla, Rose Glam*

Movants' Actions were considered related actions with respect to the Motion to Transfer in MDL No. 2942, in which the Panel denied transfer on August 12, 2020. *See* Order Denying Transfer and Directing Issuance of Show Cause Orders, MDL No. 2942, ECF No. 772 (J.P.M.L. Aug. 12, 2020) ("Order Denying Transfer"). Also pending before the Panel in MDL No. 2942 were ten additional cases brought against Erie Insurance or related entities in four additional federal judicial districts (all fifteen cases are referred to collectively herein as the "Related Actions").[3] Of the fifteen cases against Erie Insurance or related entities that were pending in MDL No 2942, twelve are filed as class actions. *See* Related Actions Chart, attached hereto as Exhibit 6 (noting which actions are filed as class actions).

As the Panel is aware, MDL No. 2942 arose from the nationwide financial devastation brought about by the COVID-19 pandemic and related government shutdown orders and the mass

---

*Hair Studio, LLC v. Erie Insurance Exchange,* Case No. 2:20-cv-02895 (E.D. Pa.) (collectively, "Movants' Actions").

[3] *Jerry's Sandwiches AV, LLC, Jerry's Sandwiches LS, LLC v. Erie Insurance Company*, Case No. 1:20-cv-03249 (N.D. Ill.); *PGB Restaurant, Inc. and all others similarly situated, North Branch Pizza and Burger Company v. Erie Insurance Exchange*, Case No. 1:20-cv-02403 (N.D. Ill.); *Pleasant Food, Inc. d/b/a Sidelines Grill Pleasant View, C & G, Inc. d/b/a Sidelines Grill Ashland City, Plantation Pub, Inc., Annex Road Group, Inc. d/b/a Hillwood Pub, DTAG, Inc. d/b/a Crow's Nest, JDA Pub, Inc. d/b/a Joe's Place, and all others similarly situated v. Erie Insurance Exchange*, Case No. 3:20-cv-00570 (M.D. Tenn.); *The Italian Village Restaurant, Inc, Capitanini Real Estate Investments Inc. v. Erie Insurance Company*, Case No. 1:20-cv-03101 (N.D. Ill.); *Geneva Foreign & Sports, Inc., individually and on behalf of all others similarly situated v. Erie Insurance Company of New York, Erie Insurance Company, Erie Indemnity Company, doing business as Erie Insurance Exchange*, Case No. 1:20-cv-00093 (W.D. Pa.); *Menns Inc. d/b/a The Tavern on Clark Individually and on Behalf of All Others Similarly Situated v. Erie Insurance Exchange and Erie Indemnity Company*, Case No. 1:20-cv-02895 (N.D. Ill.); *Robert Daly, individually and on behalf of all others similarly situated v. Erie Insurance Property & Casualty Company*, Case No. 1:20-cv-01406 (D.D.C.); *Hello Hospitality IV, LLC d/b/a St Arnolds, Hello Hospitality III, LLC d/b/a St Arnolds Mussel Bar and Hello Hospitality VI, LLC d/b/a St Arnolds Mussel Bar Bethesda v. Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange*, Case No. 3:20-cv-08215 (D.N.J.); *Izzy and Gab LLC v. Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange*, Case No. 3:20-cv-08208 (D.N.J.); *The Lock Loft, LLC v. Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange*, Case No. 1:20-cv-122 (W.D. Pa.). Of the ten cases listed, only one – the *Daly* case – does not specifically involve one of the Erie Insurers. However, the defendant in that case, Erie Property & Casualty Company is part of the Erie Insurance Group and is specifically referenced as "d/b/a" Erie Insurance Exchange. For these reasons, Movants believe that the *Daly* case should be included as a Related Action.

of litigation that ensued with respect to businesses seeking coverage for their business losses under business interruption insurance policies issued by the defendant-insurers. *See, e.g.*, Order Denying Transfer, MDL No. 2942, ECF No. 772, at 1. In its Order Denying Transfer, the Panel indicated that although it found centralization of an industry-wide MDL unwarranted, the argument for insurer-specific MDLs was more compelling. *See id.* at 3-4.  To that end, the Panel directed the Clerk of the Panel to issue orders requiring the parties to show cause why actions related to four specific insurers should not be centralized:  Certain Underwriters at Lloyd's, London ("Lloyds"); Cincinnati Insurance Company ("Cincinnati"); the Hartford insurers ("Hartford"); and Society Insurance ("Society").[4] *Id.* at 4. Subsequently, a request to issue similar orders to show cause where made with respect to Travelers Insurance and related entities ("Travelers") and State Farm insurance and related entities ("State Farm"). MDL 2942, ECF Nos. 773, 776. The requests were granted with respect to Travelers (where there were fifteen related cases pending before the Panel), MDL No. 2942, ECF No. 775,[5] and denied with respect to State Farm (where there were seven cases pending), MDL No. 2942, ECF No. 777, where the Panel stated that they were not persuaded that the seven actions against State Farm warranted a show cause order.

On the heels of these requests, Movants filed a motion for reconsideration in MDL No. 2942 seeking to have a similar order to show cause issued with respect to Erie Insurance and related entities.  *See* MDL No. 2942, ECF No. 778. The Panel denied this motion stating that "[t]here is not enough time remaining before the September hearing session for [the Panel] to consider the requested show cause order as to these Erie actions." MDL No. 2942, ECF No. 779.  Based on the solely temporal nature of the Panel's rejection of that reconsideration motion, Movants respectfully

---

[4] The four new MDLs are now MDL No. 2961 (Lloyd's), MDL No. 2962 (Cincinnati), MDL No. 2963 (Hartford) and MDL No. 2964 (Society).

[5] MDL No. 2965 (Travelers).

bring this new Motion to Transfer, seeking to create an insurer-specific MDL that includes all COVID-19 business interruption insurance cases against Erie Insurance and related entities.

The reasons that support centralization of the Lloyd's, Cincinnati, Hartford, Society, and Travelers' actions apply with equal force to the actions pending against Erie Insurance. The fifteen Related Actions pending against Erie Insurance will involve insurance policies that contain the same language, endorsements, and exclusions; will involve common discovery and pretrial motion practice; and with respect to the numerous overlapping class claims, have the potential for inconsistent pretrial rulings. Creating an Erie Insurance-specific MDL would eliminate these inefficiencies, prevent against inconsistent rulings and conserve judicial resources. The Panel recognized that if such efficiencies could be gained, centralization on an insurer-specific basis would be warranted. *See* MDL No. 2942, ECF No. 772, at 3-4. Such centralization is warranted with respect to Erie Insurance.

Movants seek the transfer and assignment of all of the Movants Actions, as well as any tag-along actions or subsequently filed actions involving similar facts or claims, to the Eastern District of Pennsylvania and to the Honorable Timothy J. Savage. Judge Savage is currently presiding over two of the fifteen cases brought against Erie Insurance.

## II. BACKGROUND

As the Panel is well aware, the COVID-19 pandemic and related government shutdown orders has wreaked havoc on the economy and brought small businesses across the country to their knees. Many of the affected businesses carry commercial property insurance policies that contain coverage for business interruption losses. Faced with the onslaught of claims by these very businesses, insurance companies across the country, including Erie Insurance, summarily denied coverage based on strained interpretations of the business interruption insurance policies that find

no support in the policies' actual texts or applicable case law. Seeking coverage, businesses across the United States initiated litigation.

In light of the volume of cases, overlapping issues, and certainty that the litigation would continue to grow, transfer motions were filed, seeking to create an industry-wide MDL that would encompass all of these claims. *See* MDL No. 2942, ECF No. 1, 4. Ultimately, prior to the Panel's decision, the potential MDL had grown to over 263 related actions that were pending in 48 federal judicial districts nationwide. *See* MDL No. 2942, ECF No. 772, at 1. Plaintiffs in all of the cases comprising MDL No. 2942 alleged that the commercial property insurance policies issued by the defendant insurers provided coverage for business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses. *See, e.g.*, Order Denying Transfer, MDL No. 2942, ECF No. 772, at 1.

Among those related actions were the fifteen actions pending against Erie Insurance and related entities. The Erie policies are substantially identical, containing similar policy language and exclusions. And this does not vary by the type of business involved, they are standard policies. In addition, all of the plaintiffs in the Erie Insurance cases were subject to a government shutdown order. Erie has taken the position that the government shutdowns are not coverable and tried to create differences between the cases by pointing to issues that have no legal significance, such as whether the plaintiff was able to remain partially open or fully closed (an issue of damages), and what type of business the plaintiff operated. *See* MDL No. 2942, ECF No. 449. These issues have no bearing on centralization.

Ultimately, the Panel found that industry-wide centralization was not warranted. *Id*. at 2-3. But, while the Panel denied centralization concluding "that the industry-wide centralization requested by movants will not serve the convenience of the parties and witnesses or further the

just and efficient conduct of this litigation" it did find that "the arguments for insurer-specific MDLs are more persuasive." *Id*. at 3. Specifically, referencing the potential of an insurer-specific MDL, the Panel noted:

> Such an MDL would be limited to a single insurer or group of related insurers and thus would not entail the managerial problems of an industry-wide MDL involving more than a hundred insurers. The actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions. Thus, there is a significant possibility that the actions will share common discovery and pretrial motion practice. Moreover, centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face. An insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by Section 1407.

*Id*.

However, the Panel chose not to establish insurer-specific MDLs on the record before it because the issue was only raised "midway through the briefing on the industry-wide motions, and no motion for an insurer-specific MDL was filed." *Id*. at 4. Because the issue was raised halfway through the process, only a few insurers and plaintiffs had an opportunity to respond to the "insurer-specific MDL proposals, which themselves were often vague as to which actions would be included in a given MDL." *Id*. The Panel determined that it "require[d] a better understanding of the factual commonalities and differences among the[] actions, as well as the efficiencies that may or may not be gained through centralization, before creating an insurer-specific MDL." *Id*.

Upon careful consideration, as noted before, the Panel acknowledged the potential for realizing the efficiencies of centralization with respect to several insurers and directed the Clerk of the Panel to issue orders requiring the parties to show cause why actions related to four specific insurers should not be centralized: Lloyds, Cincinnati, Hartford, and Society. *Id*. The Panel directed an expedited briefing schedule on those matters so they could be heard at the next Panel

hearing and avoid any further delays. *Id*. The Panel noted that centralization as to other insurers did not appear appropriate. *Id*.

Realizing that the Panel Order Denying Transfer did not rule out the possibility that other insurer-specific MDLs may be warranted if supported by an adequate record, plaintiffs in two cases against Travelers filed a Motion for Inclusion on Schedule and/or for Reconsideration of Order on August 13, 2020, in which they ostensibly sought to have an order to show cause entered in support of establishing a Travelers MDL, similar to the orders to show cause entered with respect to Lloyd's, Cincinnati, Hartford, and Society. *See* MDL No. 2942, ECF No. 773 at 2-3 (moving for an order to show cause as to fifteen pending related cases against Travelers). On August 17, 2020, the Panel granted the motion, stating that it was "persuaded that the fifteen actions naming the Travelers insurers as defendants likewise may benefit from centralization." MDL No. 2942, ECF No. 775 at 1.  Two subsequent and similar motions for reconsideration were brought seeking to create insurer-specific MDLs for cases pending against State Farm insurance-related entities, MDL No. 2942, ECF No. 776, and cases pending against Erie Insurance, MDL No. 2942, ECF No. 778, both of which were denied, MDL No. 2942, ECF Nos. 777, 779. The Panel denied the motion with respect to a State Farm MDL on substantive grounds, noting that "Plaintiffs have not persuaded us that these seven actions warrant the issuance of a show cause order." MDL No. 2942, ECF No. 777.  In contrast, the Panel denied the motion with respect to an Erie Insurance MDL on wholly procedural grounds, holding that "[t]here is not enough time remaining before the September hearing session for [the Panel] to consider the requested show cause order as to these Erie actions," MDL No. 2942, ECF No. 779.

7

### III. ARGUMENT

#### A. TRANSFER AND CENTRALIZATION OF ERIE ACTIONS IN ONE COURT FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS IS APPROPRIATE UNDER 28 U.S.C. § 1407.

The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of related actions to a single district for coordinated or consolidated pretrial proceedings "eliminate[s] duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 245 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). The Panel has recognized that these purposes and overall efficiency may be served in the COVID-19 business interruption protection insurance litigation by creating insurer-specific MDLs, and, particularly, those that contain overlapping class allegations. *See* MDL No. 2942, ECF No. 772, at 4.

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Transfer and centralization is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *In re Plumbing Fixture Cases*, 298 F. Supp. at 493. Here, there are fifteen federal actions that were previously marked related, twelve of which are class actions, that are pending in seven different federal judicial districts. And more will likely be filed.

Because the Erie Insurance policies at issue have substantially the same provisions, involve substantively identical government shutdown orders, and involve overlapping class allegations, allowing the Related Actions to proceed on their own would implicate the inefficiencies and danger of inconsistent rulings that centralization was intended to prevent. Transferring Movants' Actions and, ultimately, all of the Related Actions, to a single court for coordinated or consolidated pretrial proceedings is appropriate here, because common questions of fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on this issue of national importance.

### 1.     The Actions Involve Common Factual Issues.

Section 1407 does not require a majority of common factual issues as a condition for transfer, only that there are common questions presented which justify consolidation and coordination. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."). Here, all of the Movants Actions, the Related Actions, and any other tag-along actions, will require a determination of whether the various government shutdown orders arising from COVID-19 trigger coverage under plaintiffs' business interruption policies and, if so, whether any exclusions apply. Indeed, each of the cases will boil down to two basic questions: (1) Whether COVID-19 causes "physical damage or loss to property," as that phase is used in the Erie Insurance policies (a mixed question of law and fact); and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity or in other ways to the insured property such that coverage is triggered (a pure question of fact most likely requiring expert testimony and common

9

to all plaintiffs). The motions to dismiss filed by Erie Insurance in some of the Related Actions show that they make the same argument raising these issues in each case.

The fact that each plaintiff may run a different business, been only partially closed, rather than totally shut down, or may have different damages, does not counsel against centralization. What is important and what is relevant to the Panel's decision is that centralization will provide a consistent and uniform resolution to the common factual issues, which will facilitate the efficient adjudication of all the actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (Jud.Pan.Mult.Lit.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d at 1372; *see also In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335.

> 2. **Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.**

As noted, there are currently fifteen pending actions, twelve of which involve class claims, pending in seven different districts.[6] These Related Actions are all pending against the same

---

[6] Eleven actions are more than enough to warrant transfer and coordination or consolidation in light of the questions at issue here. *See, e.g.,* Manual for Complex Litigation Fourth § 20.131, at * 1 ("As few as two cases may warrant multidistrict treatment …"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.,* 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues); *In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (transfer ordered where three actions were pending in three districts); *In re FieldTurf Artificial Turf*

defendant, Erie Insurance and its related entities, and will involve insurance policies that contain the same language, endorsements, and exclusions; will involve common discovery and pretrial motion practice; and involve numerous overlapping class claims. Centralization will eliminate the likelihood of duplicative discovery and duplicative proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See* MDL No. 2942, ECF No. 772, at 3-4; *see also In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings).

Without transfer, coordination, and/or consolidation of Movants' Actions, the Related Actions, and other tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Further, different federal courts, in duplicating rulings on the same issues, could make contradictory findings. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### B.  THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPRIATE FORUM FOR TRANSFER AND CENTRALIZATION OF THE ERIE CASES.

The Eastern District of Pennsylvania is an excellent forum for this litigation. There are already three cases against Erie Insurance pending in the district (two before Judge Savage). In addition, case law and efficiencies are already developing there with respect to the COVID-19

---

*Mktg. & Sales Practices Litig.*, 2017 WL 2391963, at *2 (J.P.M.L. June 1, 2017) (transfer ordered where twelve to fourteen actions (including tag-alongs) were pending in nine districts).

business interruption protection insurance case. Currently, the district has thirty-nine COVID-19 business interruption protection cases which are moving forward.[7] In addition, Judge Savage has numerous cases including those involving the two original movants in MDL No. 2942, LH Dining L.L.C. and Newchops Restaurant Comcast LLC, where motions to dismiss have been fully briefed.[8]

In determining an appropriate transferee forum, the Panel often considers the relative accessibility of the district for nationwide litigation, caseload conditions, and the experience of the transferee judge. *See In re Mirena IUD Prods. Liab. Litig*., 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013); *In re CTP Innovations, LLC, Patent Litig*., 65 F. Supp. 3d 1410, 1411 (J.P.M.L. 2014) (noting that the transferee court "enjoys favorable caseload conditions"). Each of those factors, when applied to the facts of this litigation, strongly favor transfer and centralization in the Eastern District of Pennsylvania.

*Location*. The Eastern District of Pennsylvania, in Philadelphia, is the appropriate transferee district for this litigation. Erie Insurance is a largely regional insurer with a coverage area that focuses on the Mid-Atlantic and Midwest regions. *See* MDL No. 2942, ECF No. 449, at 3. The Eastern District of Pennsylvania and Philadelphia are in the heart of that territory and are easily accessible. Specifically, Philadelphia is easily accessible by Amtrak anywhere from Massachusetts to Washington, D.C. and, as the fifth largest city in the United States, it has ample accommodations for business travelers. Philadelphia is also serviced by Philadelphia International

---

[7] ISO is the entity who developed much of the very policy language at issue in these cases that is essentially standardized and utilized by many insurers

[8] *See LH Dining L.L.C., doing business as River Twice Restaurant v. Admiral Indemnity Company*, Case No. 2:20-cv-01869 (E.D. Pa.) (TJS); *Newchops Restaurant Comcast LLC, doing business as Chops v. Admiral Insurance Company*, Case No. 2:20-cv-01949 (E.D. Pa.).

Airport ("PHL"), a large international airport with routes to every corner of the country and beyond. The infrastructure is certainly in place to host this MDL.

*Caseload and Experience of the Eastern District of Pennsylvania*. In addition, the Eastern District of Pennsylvania has capable staff with a long history of successfully managing high-profile, multidistrict litigation. For example, this Panel transferred and centralized the cases concerning NFL concussion injuries in the Eastern District of Pennsylvania, *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012), as well as cases involving birth defects resulting from the depression drug, Zoloft, *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L 2012). *See also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2. The Panel's trust in the Eastern District of Pennsylvania to manage complex litigation has a long history. *See, e.g., In re Plumbing Fixtures*, 295 F. Supp. 33 (J.P.M.L. 1968). Despite handling the nation's most complex cases, the Eastern District of Pennsylvania has remained a model of efficiency. According to the Federal Court Management Statistics for the twelve-month period ending on December 31, 2019, the median time from filing to disposition for civil cases in the Eastern District of Pennsylvania was six months, and the median time from filing to trial was 19.6 months.[9] These conditions all support transferring the Erie cases to the Eastern District of Pennsylvania.

*Judge Savage*. Within the Eastern District of Pennsylvania, United States District Judge Timothy J. Savage is an excellent jurist who can effectively and efficiently preside over this

---

[9] See https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last visited August 21, 2020) at 16.

litigation. Judge Savage is currently presiding over two of the fifteen cases that have been filed against Erie Insurance and related entities, and has the largest volume of business interruption cases that were considered related in MDL No. 2942. Judge Savage is an experienced jurist who was appointed to the bench by President George W. Bush in 2002. Judge Savage is a fair, demanding but reasonable, extremely organized, and efficient judge accustomed to presiding over complex and multi-plaintiff, multi-defendant cases.

Judge Savage has the requisite prior experience with complex insurance litigation necessary to understand the issues involved. *See, e.g., Willisch v. Nationwide Ins. Co. of Am.*, 2015 WL 12831297, at *1 (E.D. Pa. Sept. 10, 2015); *Vito v. RSUI Indem. Co.*, 2020 WL 424592 (E.D. Pa. Jan. 27, 2020); *Waterman v. USAA Cas. Ins. Co.*, 2013 WL 12145867, at *1 (E.D. Pa. Apr. 18, 2013); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F.Supp.2d 339, 346 (E.D. Pa. Mar. 16, 2011). In addition, Judge Savage has successfully overseen prior MDLs assigned by this Panel, *see In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1346 (J.P.M.L. 2006), and is not currently overseeing an MDL. Simply put, Judge Savage has the necessary experience, capability, and availability to manage this complex case.

## IV.   CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Panel grant its motion for transfer and centralization of the Erie cases pursuant to 28 U.S.C. § 1407, and transfer these actions to the Eastern District of Pennsylvania, before the Honorable Timothy J. Savage.

Dated:  August 21, 2020

Respectfully submitted,

| | |
|---|---|
| /s/ *Arnold Levin* | */s/ Adam J. Levitt* |
| Arnold Levin, Esquire | Adam J. Levitt |
| Laurence S. Berman, Esquire | John E. Tangren |
| Frederick S. Longer, Esquire | Amy E. Keller |
| Daniel C. Levin, Esquire | Daniel R. Ferri |
| Keith J. Verrier, Esquire | Mark Hamill |
| **LEVIN SEDRAN & BERMAN LLP** | Laura E. Reasons |
| 510 Walnut Street, Suite 500 | **DICELLO LEVITT GUTZLER LLC** |
| Philadelphia, PA 19106-3697 | Ten North Dearborn Street, Sixth Floor |
| Telephone: (215) 592-1500 | Chicago, Illinois 60602 |
| Facsimile: (215) 592-4663 | Telephone: (312) 214-7900 |
| alevin@lfsblaw.com | alevitt@dicellolevitt.com |
| lberman@lfsblaw.com | jtangren@dicellolevitt.com |
| flonger@lfsblaw.com | akeller@dicellolevitt.com |
| dlevin@lfsblaw.com | dferri@dicellolevitt.com |
| kverrier@lfsblaw.com | mhamill@dicellolevitt.com |
| | lreasons@dicellolevitt.com |
| Richard M. Golomb, Esquire | |
| Kenneth J. Grunfeld, Esquire | Mark A. DiCello |
| **GOLOMB & HONIK, P.C.** | Kenneth P. Abbarno |
| 1835 Market Street, Suite 2900 | Mark Abramowitz |
| Philadelphia, Pennsylvania 19103 | **DICELLO LEVITT GUTZLER LLC** |
| Telephone: (215) 346-7338 | 7556 Mentor Avenue |
| Facsimile: (215) 985-4169 | Mentor, Ohio 44060 |
| rgolomb@GolombHonik.Com | Telephone: (440) 953-8888 |
| KGrunfeld@GolombHonik.Com | madicello@dicellolevitt.com |
| | kabbarno@dicellolevitt.com |
| W. Daniel "Dee" Miles, III | mabramowitz@dicellolevitt.com |
| Rachel N. Boyd | |
| Paul W. Evans | Mark Lanier |
| **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.** | Alex Brown |
| | Ralph (skip) McBride |
| P.O. Box 4160 | **THE LANIER LAW FIRM PC** |
| Montgomery, Alabama 36103 | 10940 West Sam Houston Parkway North |
| Telephone: (334) 269-2343 | Suite 100 |
| Facsimile: (334) 954-7555 | Houston, Texas 770064 |
| Dee.Miles@BeasleyAllen.com | Telephone: (713) 659-5200 |
| Rachel.Boyd@BeasleyAllen.com | WML@lanierlawfirm.com |
| Paul.Evans@BeasleyAllen.com | Alex.brown@lanierlawfirm.com |
| | Skip.McBride@lanierlawfirm.com |
| *Counsel for Laser Spa of Rochester, LLC, Sulimay's Hair Design Inc., LA Campagna Inc., Close Enterprises Inc.* | Timothy W. Burns |
| | Jeff J. Bowen |

Jesse J. Bair
Freya K. Bowen
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: (608) 286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
douglas.daniels@dtlawyers.com

Jeffrey P. Goodman
Robert J. Mongeluzzi
Patrick Howard
Samuel B. Dordick
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 496-8282
jgoodman@smbb.com
rjmongeluzzi@smbb.com
phoward@smbb.com
SDordick@smbb.com

*Counsel for High Tech Hair LLC and Capucinno Pizzeria Ristorante T/A LaVilla, Rose Glam Hair Studio, LLC*