## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re: Erie COVID-19 Business Interruption Insurance Coverage Litigation** | **MDL No.  2969** |

## ERIE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

On October 2nd, the Panel denied motions for insurer-specific MDLs as to four out of five carriers because centralization would not be efficient.  *See In re: Certain Underwriters at Lloyd's London COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2961, Dkt. 107 (J.P.M.L. Oct. 2, 2020); *In re: Cincinnati Ins. Co.  COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2962, Dkt. 136 (J.P.M.L. Oct. 2, 2020); *In re: Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2963, Dkt. 248 (J.P.M.L. Oct. 2, 2020); *In re: Travelers COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2965, Dkt. 76 (J.P.M.L. Oct. 2, 2020).  The Panel did so because the cases pending against those four carriers were geographically dispersed, management and pretrial consolidation of the cases would be complex and unwieldy, most discovery would be plaintiff-specific, and numerous motions already pending (and many fully briefed) signaled the dispositive policy interpretation issue in each case would be more timely addressed by the home courts.  The Panel should reach the same result as to Defendants Erie Insurance Company, Erie Insurance Exchange, Erie Indemnity Company, and Erie Insurance Property & Casualty Company (collectively, "Erie").  Erie thus respectfully opposes Plaintiffs' Motion for Transfer and Centralization under 28 U.S.C. § 1407 (Dkt. No. 1) (the "Transfer Motion").

Like the insurers for which the Panel recently denied Plaintiffs' Motions to Transfer, Erie does business in a wide range of states, writes its own business interruption forms (containing

some language from ISO forms, but not adopting those forms wholesale), and is defending COVID-19 business interruption coverage lawsuits dispersed across numerous states and six federal circuits. Erie sells insurance in twice the number of states and has cases pending in twice as many federal circuits, as compared to the lone carrier as to which the Panel found centralization to be efficient. Whereas the one carrier subject to MDL consolidation did *not* issue any policies with a virus exclusion, some Erie policies at issue are policies *with* a virus exclusion while other Erie policies at issue are policies *without* a virus exclusion. The pending federal cases are not regionally concentrated—spanning the Northeast, Midwest, and South in the Second, Third, Fourth, Sixth, Seventh, and D.C. Circuits—involving the laws of twelve different states plus the District of Columbia. Moreover, in addition to the federal cases before this Court, Erie is defending thirty-seven *state* court actions in thirteen different county courts in five states and the District of Columbia – *none* of which are subject to MDL consolidation. And to the extent movants argue consolidation would minimize the risk of inconsistent federal court decisions as to the legal effect of allegedly common policy language, the Panel has already rejected this argument. As the Panel recognized, the use of purportedly common language (including but not limited to ISO forms) is not sufficient, standing alone, to warrant centralization. *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, 2020 WL 4670700, __ F. Supp. 3d __ (J.P.M.L. Aug. 12, 2020).

## ARGUMENT

## I.   THE PANEL SHOULD DENY MDL TRANSFER

Movants request Transfer and Centralization of thirteen actions, and an additional twelve actions have been noticed as potentially Related Actions (collectively, the Actions)[1], each of which

---

[1] Movants initially included *Geneva Foreign & Sports v. Erie Ins. Co. of N.Y., et al*., No. 1:20-cv-00093 (W.D. Pa.), in their Schedule of Actions. However, on September 3, 2020, Plaintiffs opted

are at differing procedural postures,[2] and are subject to different state and local COVID-19 orders.

Centralization under Section 1407 is inappropriate for three reasons.  First, no efficiencies would

_____

to voluntarily dismiss that action rather than oppose Erie's Motion to Dismiss.  Similarly, Movants also initially included *Daly v. Erie Ins. Prop. & Cas. Co.*, 1:20-cv-1406 (D.D.C.), in their Schedule of Actions.  However, on September 11, 2020, Plaintiff opted to voluntarily dismiss that action rather than oppose Erie's Motion to Dismiss.  Plaintiff has since refiled its Complaint in federal court in the District of Columbia under *MZ-DC, Inc., v. Erie Ins. Exch.*, 1:20-cv-2651 (D.D.C.). Three additional actions have since been noticed by Plaintiffs as purported Related Actions: *Amy M. Cobb v. Erie Ins. Prop. & Cas. Co*., No. 1:20-cv-00269 (W.D. Pa.); *Sidelines Beer House v. Erie Ins. Exch*., No. 2:20-cv-01246 (W.D. Pa.); and *Balogh Enterprises, LLC v. Erie Ins. Exch*., 1:20-cv-259 (W.D. Pa.).

Erie has noticed an additional nine actions (Dkt. 48) as potentially "Related Actions" solely for purposes of ensuring that the Panel has the complete picture before it as to (1) the diversity of the actions filed against Erie, (2) Erie's proactive efforts to dispose of these cases on early dispositive motion practice, and (3) the district courts' efficient treatment of these actions through the imposition of abbreviated scheduling orders that, to the extent cases aren't awaiting decisions on motions to dismiss, direct that discovery close by mid-2021 in most cases.  Erie does ***not*** concede that these actions are factually "Related" beyond a superficial level and the basic fact that they are all COVID-19 business interruption insurance coverage actions against Erie that have been filed in or removed to federal court.  The additional nine actions are: *MZ-DC, Inc. v. Erie Ins. Exch*., No. 1:20-cv-2651 (D.D.C.) (case refiled after *Daly* action voluntarily dismissed, action has not yet been served); *Tappo of Buffalo, LLC v. Erie Ins. Exch*., No. 1:20-cv-754 (W.D.N.Y.) (motion to dismiss pending); *Hutch & Associates v. Erie Ins. Co. of N.Y*., No. 1:20-cv-00896 (W.D.N.Y.) (motion to dismiss pending); *Melange Café v. Erie Ins. Prop. & Cas. Co*., No. 2:20-cv-00441 (S.D.W. Va.) (discovery in progress and set to close on January 4, 2021 with trial set for June 7, 2021); *Valerio's Inc. v. Erie Ins. Exch*., No. 1:20-cv-01213 (N.D. Ohio) (motion to dismiss pending); *Dimitrios Zavogiannis v. Erie Ins. Exch*., No. 4:20-cv-00039 (E.D. Tenn.) (answer filed); *Three Little Pigs v. Erie Ins. Exch*., No. 2:20-cv-02544 (W.D. Tenn.) (answer filed on October 2, 2020 and scheduling conference set for November 13, 2020); *Joianna, Inc. v. Erie Indem. Co*., No. 1:20-cv-4114 (N.D. Ill.) (discovery in progress and set to close on June 30, 2021); *Udesky v. Erie Ins. Prop. & Cas. Co*., No. 1:20-cv-04994 (N.D. Ill.) (Complaint served on August 25, 2020, answer or response due October 26, 2020).

[2]  *PGB Restaurant, Inc. v. Erie Ins. Co.*, 1:20-cv-02403 (N.D. Ill.) (discovery in progress and motion for class certification currently due on October 28,2020; Erie intends to file a 12(c) motion, and has contacted plaintiffs regarding seeking leave from the court as to postponement of certification deadlines pending a ruling on its dispositive motion); *The Lock Loft, LLC v. Erie Ins. Prop*., 1:20-cv-122 (W.D. Pa.) (motion to dismiss the first amended complaint filed); *Laser Spa of Rochester LLC v. Erie Ins. Co.*, 6:20-cv-06308-FPG (W.D.N.Y.) (motion to dismiss filed); *Italian Vill. Rest. Inc., et al. v. Erie Ins. Co*., 1:20-cv-03101 (N.D. Ill.) (discovery in progress and set to close on April 31, 2021); *Menns Inc. d/b/a The Tavern on Clark v. Erie Ins. Exch. et al*, 1:20-cv-02895 (N.D. Ill.) (neither discovery nor dispositive motion practice commenced); *Jerry's*

result from transferring these actions into a centralized proceeding; indeed, transfer and centralization would likely introduce unnecessary delay.   Second, any superficial factual commonality between the Erie Actions will be overwhelmed by the individualized questions and uncommon answers requiring plaintiff-specific discovery, as the Actions encompass different businesses (including different industries and essential and non-essential businesses), in different states, alleging different claims for relief (some alleging COVID-19 on premises and others solely alleging the Executive Orders caused their losses), pursuant to different policies of insurance (some with and others without a virus exclusion), governed by different state laws and arising in connection with different governmental closure orders.   Third, the slight risk of overlapping class definitions is largely a strawman and does not on its own support centralization.   For each of these reasons, Erie respectfully requests that the Panel deny the Motion to Transfer.

### A.  MDL Transfer Is Inefficient And Unjust

The Panel previously emphasized that: "[m]any plaintiffs are on the brink of bankruptcy as a result of business lost due to the COVID-19 pandemic and the government closure orders"; "[t]he

---

*Sandwiches et al. v. Erie Ins. Co*., 1:20-cv-3249 (N.D. Ill.) (discovery in progress and set to close on February 28, 2021); *High Tech Hair LLC, et al. v. Erie Ins. Exch*., 2:20-cv-02895 (E.D. Pa.) (answer to complaint filed, discovery not yet in progress); *Sulimay's Hair Design Inc., et al. v. Erie Ins. Exch*., 2:20-cv-02731 (E.D. Pa.) (answer filed September 8, 2020; *La Campagna Inc. v. Erie Ins. Grp*., 2:20-cv-02689 (E.D. Pa.) (answer to complaint filed); *Close Enterprises Inc., et al. v. Erie Ins. Grp*., 1:20-cv-00147 (W.D. Pa.) (motion to dismiss amended complaint filed); *Pleasant Food Inc., et al. v. Erie Ins. Exch*., 3:20-cv-00570 (M.D. Tenn.) (answer to Complaint filed September 11, 2020); *Hello Hospitality IV LLC, et al. v. Erie Ins. Prop. & Cas. Co*., 1:20-cv-00281 (W.D. Pa.) (Erie's answer is due October 9th, 2020, Erie is considering filing a 12(c) motion shortly thereafter); *Izzy & Gab LLC v. Erie Ins. Prop. & Cas. Co*., 1:20-cv-00266 (W.D. Pa.) (Erie's answer is due October 9, 2020, Erie is considering filing a 12(c) motion shortly thereafter); *Amy M. Cobb v. Erie Ins. Prop. & Cas. Co*., 1:20-cv-00269 (W.D. Pa.) (Erie's answer is due October 9th, 2020, Erie is considering filing a 12(c) motion shortly thereafter); *Balogh Enterprises, LLC v. Erie Ins. Exch*., 1:20-cv-259 (W.D. Pa.) (answer or response due November 13, 2020); and *Sidelines Beer House v. Erie Ins. Exch*., No. 2:20-cv-01246 (W.D. Pa.) (answer or response due October 26, 2020).

most pressing question…, therefore, is whether centralization presents the most efficient means of advancing these actions towards resolution." *In re: Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2963, Dkt. 248 at 2 (J.P.M.L. Oct. 2, 2020). Here, the answer to that question is no.

Transfer and centralization under Section 1407 is not warranted where, as here, the Actions at issue are "being litigated in a manner that is likely to lead to their resolution . . . within a relatively short period of time" through the filing of early, successful, motions to dismiss. *See, e.g., In re Brandywine Comm's Tech., LLC Patent Litig.*, 959 F. Supp. 2d 1377, 1378 (J.P.M.L.); *In re Fla., P.R. & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1369 n. 4 (J.P.M.L. 2018) (early dismissal of certain actions to be centralized supported arguments that centralization was unwarranted).

Significant developments in these cases nationwide occurring since the Panel's first Order in MDL No. 2942 punctuate the point that centralization would likely impede efficient resolution of these Actions. Federal and state courts have been moving these cases forward and addressing dispositive motions, with the overwhelming weight of authority resulting in quick and efficient resolution in the insurance carriers' favor. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds,* No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (holding COVID-19 did not cause "direct physical loss" and governmental closure orders did not trigger civil authority coverage); *10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS (C.D. Cal. Sept. 2, 2020); *Pappy's Barber Shops, Inc., et al v. Farmers Grp., Inc., et al.*, 2020 U.S. Dist. LEXIS 166808 (S.D. Cal. Sept. 11, 2020); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, No. 20-CV-2160, 2020 U.S. Dist. LEXIS 171979 (N.D. Ill. Sept. 21, 2020); *Mudpie, Inc. v. Travelers Ins. Co of America*, No. 20-cv-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept.

14, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ-Williams/Torres, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020); *The Inns by the Sea v. California Mutual Ins. Co.*, Case No. 20CV001274 (Sup. Ct. Cal. Monterey Co., Aug. 6, 2020) (dismissing the insured's claim without leave to amend in a short-form order); *Gavrilides Management Co. LLC v. Michigan Ins. Co.*, No. 20-258-CB, 2020 Mich. Cir. LEXIS 395 (Mich. Cir. Ct. July 21, 2020) (granting insurer's motion for summary disposition); *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, Case No. 1:20 cv 03311 VEC (S.D.N.Y. 2020) (denying Plaintiffs motion for preliminary injunction after noting that viruses harm people, not printing presses, after which Plaintiff voluntarily dismissed) (attached as Ex. 1); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. CV 20-6954-GW-SKx, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020); *Infinity Exhs. Inc. v. Certain Underwriters at Lloyds*, Case. No. 8:20-cv-1605-T-30AEP, 2020 U.S. Dist. LEXIS 182497 (M.D. Fla. Sept. 29, 2020); *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, 2020 WL 5820552 (S.D. Iowa Sept. 9, 2020); *Franklin EWC, Inc.* v. *The Hartford Fin. Servs. Grp., Inc.*, 20-cv-4434-JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) (Civil Authority argument that loss was created by the closure orders, not by the virus was "nonsense"; granting insurer's motion to dismiss claims based on policy's virus exclusion); *It's Nice, Inc. v. State Farm Fire & Cas. Co.*, No. 20-L-547 (Ill. Cir. Ct. Sept. 30, 2020) (dismissing complaint on grounds that "direct physical loss unambiguously requires some form of actual physical damage to the insured premises to trigger coverage.") (attached as Ex. 2); *Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indem. Co. of Connecticut, et al.*, No. 2:20-cv-04423 (C.D. Cal. Oct. 2, 2020) (dismissing the Complaint with prejudice on grounds that coverage was not triggered because "losses from inability to use property do not amount to 'direct physical loss of or damage to property'") (attached as Ex. 3); *Henry's Louisiana Grill, Inc., et al. v. Allied Ins. Co. of Am.*, No. 1:20-cv-

02939-TWT (N.D. Ga. Oct. 6, 2020) (dismissing Complaint on grounds that governmental orders closing restaurant dining rooms did not cause "direct physical loss of or damage to property") (attached as Ex. 4).

Erie's cases are no exception.  Erie has already filed dispositive motions in six of the twenty-five pending Actions: *Lock Loft*, *Laser Spa*, *Valerio's*, *Tappo of Buffalo*, *Hutch & Associates*, and *Close Enterprises*.  Erie also moved to dismiss the Complaints in *Geneva Foreign & Sports* and *Daly*; however, Plaintiffs in those actions voluntarily dismissed their cases rather than respond to Erie's Motions to Dismiss.[3]  And Erie anticipates filing additional dispositive motions – including in Actions that have been filed since Movants requested consolidation – well before the scheduled December 3 argument.  Centralization of these actions would slow their resolution, subjecting Erie and the MDL Court to the administrative inefficiencies of omnibus consolidation in actions well-suited to early dismissal.

In fact, Erie has already obtained dismissal of the COVID-19 business interruption coverage action brought by *Rose's I, LLC* – a case in which the policy did not have a virus exclusion.  *See Rose's I, LLC v. Erie Ins. Exch*., 2020 D.C. Super. LEXIS 10 (D.C. Sup. Ct. Aug. 6, 2020).  And Erie's motions to dismiss in other cases, including *Laser Spa*, would likely be fully briefed already had plaintiffs not sought a stay pending the Panel's ruling in MDL No. 2942.  As it is, Laser Spa filed a second Motion to Stay the action pending this Panel's ruling on the instant Motion to Transfer, which Motion Erie objected to and the Court denied.  Erie's Motion to Dismiss will be fully briefed by October 27, 2020.  Erie reasonably anticipates many of the Actions will similarly be disposed of on the pending motions to dismiss, following the numerous decisions that have dismissed actions against other carriers.  *See In re Sears, Roebuck & Co. Emp. Practices*

---

[3] *See supra* n. 1.

*Litig.*, 487 F. Supp. 1362 (J.P.M.L. 1980) (denying motion to transfer where actions were subject to pending motions to dismiss and could "proceed more expeditiously if left alone.")

In addition to the likelihood that several of the Actions will be resolved on early motions to dismiss, the advanced—and efficient—progress of at least ten of the Actions counsels against centralization. Four of the actions, *Melange Café, Joianna, Jerry's Sandwiches,* and *Italian Village,* have already commenced discovery in the Northern District of Illinois, which is scheduled to close by mid-2021. Meanwhile, the *PGB Restaurant* action is already engaged in class discovery. Depending on whether the court defers scheduled deadlines due to Erie's forthcoming 12(c) motion, class certification briefing may be well-underway in that action before the Panel's December 2020 Hearing. Centralization of these actions would very likely *block* quick resolution of these actions—by the time the actions were to be transferred, leadership groups formed, consolidated complaints drafted, and discovery schedules set in a centralized proceeding, meaningful activity could have occurred in many, if not all, of the Actions had they remained in their home courts. Where, as here, the Actions are proceeding expeditiously in their home courts, Section 1407 should not be employed to unnecessarily hinder their efficient workings. *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (J.P.M.L. 1979) (citing as additional reason to deny transfer the fact that several actions were sufficiently advanced such that transfer would only "disrupt the orderly progress that is presently being made in the actions . . . and would result in no significant benefits to the parties."). In short, centralization would turn the very purpose of centralization—judicial efficiency—on its head.

### B. The Erie Actions Vary Significantly With Respect To The Types Of Property At Issue, The Applicable State Laws and Governmental Orders, And The Claims Asserted By The Insureds, Rendering Centralization Unwarranted.

This Panel has already explained that Movants' so-called "common question"—"whether the various government shutdown orders arising from COVID-19 trigger coverage under

plaintiffs' business interruption policies and, if so, whether any exclusions apply" (Mot. at 9)—demonstrates only "superficial commonality" (MDL No. 2942, Dkt. 772 at 2).  And this superficial commonality is utterly overwhelmed by the highly individualized inquiries necessary to resolve each individual coverage dispute, in the event they are not fully resolved on the pleadings.  *See In re Gasoline Lessee Dealers Antitrust Litig*., 479 F. Supp. 578, 580 (J.P.M.L. 1979) (denying transfer where actions shared "some questions of fact," but those common questions were outweighed by "critical factual and legal disparities between the actions.").[4]

### 1. The actions feature distinct factual allegations and claims under different state laws.

The interpretation of an insurance policy is governed by state contract law, *see, e.g., Armstrong v. U.S. Fire Ins. Co.*, 606 F. Supp. 2d 794, 801 (E.D. Tenn. 2009) (Under Tennessee law, the substantive rights of parties to an insurance contract are governed by the laws of the state contemplated by the parties [or] the laws of the state in which the contract was entered into *); Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.,* 551 F. Supp. 2d 711, 718 (N.D. Ill. 2008) ("Because the court's jurisdiction is based on diversity, state law determines the scope of insurance coverage. Both sides agree that Illinois law governs the contract dispute."). Thus, the answer to the purportedly common legal question—whether COVID-19 causes "physical

---

[4] The Panel's conclusion is in keeping with its prior decisions to deny transfer in insurance coverage actions—cases that, by their very nature, implicate individualized issues and require insured-specific discovery.  *See, e.g., In re Florida Hurricane Seasons Flood Claims Litig*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018) (denying transfer on grounds that while the coverage actions had 'superficial factual commonality,' '[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages"); *In re The Great W. Cas. Co. Ins. Litig*., 176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016) (denying transfer where the only commonality between the actions was that a common insurance company had denied coverage of an insurance claim).  Where discovery is likely to be primarily plaintiff-specific, centralization is unwarranted and may actually impede the efficient resolution of these disputes already happening in the respective home courts.

damage or loss to property"—posited by Movants will depend on the applicable state law; it is incapable of a common answer and, frankly, meaningless in the abstract.

The businesses implicated in the Actions range from hair salons and automobile dealerships to taverns and restaurants.  Each of them will have been impacted by, and will have responded to, COVID-19 and the state-wide and local governmental orders in different ways. Several of the actions seek only declaratory relief (Dkt. 2-10), while others seek damages for alleged breach of contract (Dkt. 2-3), and some seek both, (Dkt. 2-4).  Of those that seek damages for breach of contract, some allege only a breach of the business income provisions (Dkt. 2-4), while others allege breaches of contract under the business income, civil authority, and extra expense coverage provisions (Dkt. 2-6; Dkt. 2-9).  Italian Village seeks damages for bad faith under an Illinois statute, (Dkt. 2-6 at 18 ¶¶63-68), while Pleasant Food alleges damages for bad faith breach of the covenant of good faith and fair dealing under Tennessee common law (Dkt. 2-5 at 31 ¶¶ 121-26).  And the allegations of the complaints reflect meaningful disparities, with some of them focusing on the Executive Orders as the purported root cause of their claims for coverage, others focusing on varying degrees of suspected COVID-19 on their property, and still others *disclaiming* the presence of virus on their own properties and focusing on suspected COVID-19 on nearby property in an effort to trigger civil authority coverage.  *See relatedly In re: Travelers COVID-19 Business Interruption Protection Ins. Litig*., MDL No. 2965, Dkt. 76 at 2 (J.P.M.L. Oct. 2, 2020) (denying MDL consolidation where plaintiffs were "pursing distinct theories of liability").

The Actions against Erie illustrate the Panel's observations with respect to the lack of over-arching commonality between actions in an industry-wide MDL or most of the carrier-specific MDLs: "[T]hese cases involve *different insurance policies* with *different coverages* . . . purchased

by *different businesses* in *different industries* located in *different states*.  These differences will overwhelm any common factual questions."  MDL No. 2942, Dkt. 772 at 2.  Indeed, unlike the lone insurance carrier as to which the Panel granted MDL Transfer, Erie's policies in the twenty-five pending federal Actions include policies with a virus exclusion – as well as policies without one.

Further, the Actions include both individual and class actions (including alleged nationwide and single state classes), which are governed by the laws and COVID-19 related governmental orders of at least twelve different states and the District of Columbia, as well as local orders including those issued by authorities in Chicago, Illinois and Philadelphia, Pennsylvania. Not only have Plaintiffs filed several nationwide class actions against Erie – which necessarily implicate the laws of all thirteen jurisdictions in which Erie writes commercial property insurance coverage – but Erie has received claims from policyholders in every one of the jurisdictions in which it writes policies, and thus anticipates additional litigation involving the laws of each of the jurisdictions in which it writes commercial property policies.

## 2. The Related Actions encompass different industries that faced unique challenges due to COVID-19.

Movants argue that "[t]he fact that each plaintiff may run a different business, been only partially closed, rather than totally shut down, or may have different damages, does not counsel against centralization" because, what is important, "is that centralization will provide a consistent and uniform resolution to the common factual issues."  Transfer Mot. at 10.  Not so.  Indeed, it is precisely because plaintiffs run different businesses, operate different industries, were subject to different closure requirements under different governmental orders, and made unique operational decisions that there are no common questions for which centralization could provide consistent resolution.

The variations between plaintiffs' businesses are not immaterial, nor do they relate solely to damages, as Movants assert.  *See* Transfer Mot. at 5.  Rather, these differences are central to any question concerning the viability of plaintiffs' claims and highlight why consolidation would be inefficient.  Put simply, they are liability-determinative questions of fact that are unique to each case.  For instance, almost every plaintiff seeks coverage under a "civil authority" provision under its customized Erie policy.  Civil authority provisions as a rule require that, among other things, legally cognizable damage to a nearby property must have resulted in a civil authority order ***prohibiting access to the insured property***.  However, if a business did not completely cease operations, access to it was not prohibited.  *See, e.g., 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 306 A.D.2d 67, 67, 763 N.Y.S.2d 243, 243 (App. Div. 1st Dept. 2003); *Sandy Point Dental*, 2020 WL 5630465, at *3 ("[P]laintiff concedes that dental offices were deemed essential businesses for emergency and non-elective work. Consequently, plaintiff has failed to allege that access to its premises was prohibited by government order, and its claim for civil authority coverage fails.").  And whether the business completely ceased operations will depend upon the individual decision-making of the business owner pertaining to issues like profitability, health of staff and customers (for example, whether they are immuno-compromised), and supply chain concerns.  The type of business and industry is also relevant because different industries have been subject to different restrictions for varying periods of time under the applicable governmental orders, the terms of which may have different implications with respect to the availability of coverage.  These inquiries do not lend themselves to brushstroke mass adjudication and will necessarily require individualized plaintiff-specific discovery.  *See, e.g., In re Tyson Foods, Inc. Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (denying transfer where discovery was likely to be plant-specific and proceed on

a plant-by-plant basis"); *In re Electrolux Dryer Prod. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013) (denying transfer where although the "actions share[d] factual questions arising out of allegations that dryers manufactured by Electrolux have a common design defect that . . . resulted in fires . . .individualized facts concerning the circumstances of each fire, including installation, repair, and maintenance, will predominate over the common factual issues alleged by plaintiffs").

Even where plaintiffs allege a complete cessation of business operations, the veracity of their claims must be tested via individualized plaintiff-specific discovery. Erie's preliminary investigations have already uncovered evidence that at least several plaintiffs who have alleged that they completely ceased operations did not in fact do so. For example, while the plaintiff in *Italian Village* alleges it was forced to cease operations, it has been offering food via carryout to its patrons since the earliest days of the pandemic. *See* Ex. 5 (True and correct copy Plaintiff Italian Village Restaurant's webpage captured May 12, 2020).[5] If a patron can buy carryout from Italian Village, then Italian Village did not cease operations and its premises are not ***inaccessible*** as required for civil authority coverage to apply. These kinds of unique factual differences will vary from industry-to-industry and from policyholder-to-policyholder and will require—where claims are not dismissed outright—examination of numerous executive orders on the state, county, and municipal level, and the plaintiffs' individual responses to those orders. *See In re: Travelers COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2965, Dkt. 76 at 3 ("[S]hould plaintiffs' claims survive dispositive rulings on the policy interpretation questions . . . much of the

---

[5]  In opposition to consolidation "material evidence may be offered by any party to an action pending in any district that would be affected by the proceedings[.]" 28 U.S.C. § 1407(c).

discovery will be plaintiff- and property-specific. In these circumstances, it is more likely the actions will reach an expeditious resolution if they remain in the transferor courts.").

At the end of the day, discovery on a plaintiff restaurant in Illinois—including the orders applicable to its business, what operational decisions were made by plaintiff, what services the business offered, how profitable the business was, how and when the business was accessed, and whether COVID-19 was ever on the property—tells us absolutely nothing about any of these things for a car dealer in Pennsylvania. Forcing centralization of distinct cases where the super-majority of questions of fact are apples and oranges does not meet the letter or the spirit of the standard and would needlessly overcomplicate cases already well on their way toward efficient resolution.

### 3. Whether COVID-19 was present on or near an insured property requires individualized inquiry.

Movants cite *Studio 417* for the proposition that – at least under the law of Missouri – COVID-19 business interruption coverage claims can survive dismissal. However, that case involved allegations that COVID-19 was present on the insured premises. Here, six of the twenty-five actions include allegations that COVID-19 was present at the insured property and caused direct physical loss or damage; by contrast other plaintiffs (*e.g.*, PGB) have stipulated that there was no virus on their property. Assuming that cases alleging the presence of COVID-19 on the insured property can survive a motion to dismiss in any state, courts would then need to conduct a highly individualized inquiry as to the presence of COVID-19 on each of the plaintiff-insureds' premises (*e.g.*, precisely where the virus was, how long it was present, whether it was cleaned away, etc.). This question is plainly not amenable to resolution through common discovery and common pretrial rulings, and does not support Section 1407 transfer. *See In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). Consequently, centralization would not "eliminate the likelihood of duplicative

discovery" because discovery as to whether the Coronavirus was present on, for example, Italian Village's property in Illinois will have no impact at all on the discovery that will need be taken to determine whether COVID-19 was present on Close Enterprise's property in Pennsylvania. Instead, each action, if it survives a motion to dismiss, would involve primarily individualized plaintiff-specific discovery.

### C. The Risk of Overlapping Classes Is Minimal And Does Not Support Centralization.

Movants also assert that "overlapping class allegations" introduce a risk of inconsistent rulings absent centralization. This is not only a red herring, but this risk also is unlikely to materialize and is largely plaintiffs' own doing. Indeed, of the twenty putative class actions, ten allege nationwide putative classes of all business types; four of those overlapping classes – *Izzy and Gab*, *Hello Hospitality*, *Cobb,* and *Balogh Enterprises – were filed by the same Plaintiffs' counsel*. Plaintiffs' counsel should not be permitted to game the system by filing multiple class actions, and then asserting that the litigation must be centralized because of the multiplicity of their filings. *Cf. In re: LVNV Funding, LLC, Fair Debt Collection Practices Act (FDCPA) Litig.*, 96 F. Supp. 3d 1374, 1375 (J.P.M.L. 2015) ("The overlap between the classes asserted in the actions pending in the Southern District of Texas can be disregarded because the same plaintiff brought each of those actions.").

In fact, the proponents of centralization (Dkt. Nos. 1, 39) represent plaintiffs in nine of the twenty-five Actions – encompassing both putative class actions and individual cases. Undoubtedly, those three groups of plaintiffs' counsel are already coordinating, and will continue to do so with or without centralization. *See, e.g., In re Corvette Z06 Mktg. & Sales Practices Litig.*, 289 F. Supp. 3d 1348, 1349–50 (J.P.M.L. 2018) (denying centralization where "Plaintiffs are

represented by common counsel, as are defendants" such that "[c]ooperation among the few involved courts and these two groups of counsel appears to be a workable alternative").

Finally, to the extent the individual district courts determine that any formal coordination at all is warranted, those courts should be permitted to proceed with the cases on their dockets and to determine whether some reasonable form of consolidation or coordination is warranted under the precedent prevailing in that jurisdiction, based on the facts and circumstances of each particular case, the applicable district's local rules and their requirements, and the number of cases filed in any state or district.  *See, e.g.*, *In re Epipen (Epinephrine Injection, USP) Employee Ret. Income Sec. Act (ERISA) Litig.,* 276 F. Supp. 3d 1384, 1385 (J.P.M.L. 2017) (holding that alternatives such as transfer pursuant to 28 U.S.C. § 1404(a) or informal coordination of discovery were preferable to centralization); *see also In re Dometic Corp. Gas Absorption Refrigerator Prod. Liab. Litig.*, 285 F. Supp. 3d 1358, 1360 (J.P.M.L. 2018); *In re Credit Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (encouraging "various alternatives to transfer which may minimize the risk of duplicative discovery and/or inconsistent pretrial rulings").[6]

---

[6] The Southern District of West Virginia has already consolidated two individual actions filed by *Filmantix* and *Melange Café*, without objection from Erie in light of the liberal standard applied by that court with respect to the issue of consolidation.  Moreover, after Erie filed a motion to dismiss or transfer in *Izzy and Gab*, *Hello Hospitality*, and *Cobb*, plaintiffs and Erie stipulated to transfer of these actions to the Western District of Pennsylvania.  Finally, consistent with its position that these Actions do not involve the "same issue of fact" or arise out of the "same transaction," and in order not to concede this issue, Erie opposed Related Case treatment as to three actions pending in the Eastern District of Pennsylvania—*Sulimay's*, *La Campagna*, and *High Tech Hair*—because, pursuant to the Local Rules of that court, related case treatment is only appropriate where the cases "involve[] the same issue of fact or grow[] out of the same transaction," and Erie cannot concede that these cases share *the same* issue of fact.  However, those Actions have, over Erie's objection, nevertheless been deemed related by the Eastern District of Pennsylvania and reassigned to Judge Kenney.  Absent the risk of conceding that the Actions share the same issues of fact, Erie is not opposed to the efficient formal, or informal, coordination of the Actions in the individual district courts.

II.     **ASSUMING, *ARGUENDO*, THAT CENTRALIZATION IS WARRANTED, THE ACTIONS SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF PENNSYLVANIA**

Given the advanced stage of eleven of the twenty-five Actions (not including those Actions in which Erie's deadline to file a motion to dismiss has not yet passed and those actions in which Erie intends to file 12(c) motions), and the minimal risk of overlapping class actions, centralization under Section 1407 makes little sense. However, if the Panel determines that Transfer and Centralization is appropriate for these Actions, Erie respectfully submits that the actions should be centralized in the Western District of Pennsylvania before Judge Susan Paradise Baxter, whose Chambers are in Erie and convenient to Erie's headquarters in Erie, Pennsylvania. The Western District of Pennsylvania has ample experience managing complex multi-district litigation, more of the Actions are pending in the Western District of Pennsylvania than in any other single district, more of the Actions are pending before Judge Baxter than any other Judge, and any documents or witnesses likely to be produced by Erie are located there.

The United States District Court for the Western District of Pennsylvania, with chambers in both Erie and Pittsburgh, provides the most convenient and efficient venue for discovery. Erie is headquartered in Erie, Pennsylvania and Erie's claims files and claims examiners are located in Erie. The location of defendant's headquarters is a determinative factor in selecting the appropriate transferee forum because the headquarters is a likely hub for relevant discovery. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. & Sales Practices Prods. Liability Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (finding Central District of California appropriate transferee district because "Toyota maintains its United States corporate headquarters within this district, and relevant documents and witnesses are likely located there"); *see also In re: Lead Contaminated Fruit Juice Prod. Mktg. and Sales Practices Litig.*, 777 F. Supp. 2d 1353, 1355 (J.P.M.L. 2011) ("this district is the most conveniently located to the headquarters of the various defendants and,

17

therefore, the location of relevant documents and witnesses"). Therefore, to the extent the Actions involve the need for discovery from Erie, the parties and the court will have fewer challenges and expenses throughout discovery. Plaintiffs in the *Izzy and Gab*, *Cobb,* and *Balogh Enterprises* actions are based in Erie, and a majority of any Erie documents and witnesses will be centrally located in Erie's headquarters, located in the Western District of Pennsylvania. The Western District of Pennsylvania is also served by both a convenient international airport in Pittsburgh, and a local airport in Erie (for those seeking to avoid the drive between Pittsburgh and Erie, Pennsylvania) served by major airlines including American and United Airlines, which is less than 7 miles from both the Erie Defendants and the Western District of Pennsylvania's Erie Chambers. Indeed, the Erie Defendants' offices are located less than 500 feet from the courthouse. Moreover, the Western District of Pennsylvania has a larger number of Related Actions pending than the Eastern District of Pennsylvania – where movants seek centralization. In addition, many of the cases in the Western District of Pennsylvania are at a more advanced stage than those pending in the Eastern District of Pennsylvania, and *Lock Loft LLC*—pending in the Western District of Pennsylvania—is the earliest-filed Action of those filed in any court in the Third Circuit.

The Western District of Pennsylvania also has capable staff with significant experience in complex multi-district litigation. *See, e.g.*, *In re Enter. Rent-A-Car Wage & Hour Emp. Practices Litig.*, 626 F. Supp. 2d 1325 (J.P.M.L. 2009) (transferring actions to the Western District of Pennsylvania); *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.,* 368 F. Supp. 2d 1354 (J.P.M.L. 2005) (same); *In re Diisocyanates Antitrust Litig.,* 2019 U.S. Dist. LEXIS 38815 (J.P.M.L. 2019) (same); *In re Maxim Integrated Prods*., 867 F. Supp. 2d 1333 (J.P.M.L. 2012). Further, according to 2019 statistics, there are approximately 270 civil actions per judgeship in the

Western District of Pennsylvania, compared to 329 in the Eastern District of Pennsylvania.[7] More importantly, in the Western District of Pennsylvania, just 62 civil actions (or 3.1%) had been pending for more than three years, as compared to 1,512 civil actions (or 21.9%) that had been pending for more than three years in the Eastern District of Pennsylvania during the same 12 month period. Thus, if time is truly of the essence, then the Western District of Pennsylvania will likely be the most efficient venue for the timely resolution of the Actions.

Finally, all of the pending COVID-19 cases pending in the Eastern District of Pennsylvania are in their early stages, and both of the Actions previously pending before Judge Savage have since been reassigned to Judge Kenney, so there is no reason to give preference Plaintiffs' requested district or Judge over the Western District of Pennsylvania. Moreover, the Western District of Pennsylvania provides the benefits of convenience, creates more efficiencies, and eliminates challenges for a swift determination.

## III.   CONCLUSION

Centralization under Section 1407 should be denied in its entirety. Centralization of these cases would *slow* resolution of many cases that are already proceeding apace. And even after cases are transferred, leadership committees finalized, amended complaints filed, and schedules established, the proceedings would likely grind to a halt under the weight of the individualized, fact-specific inquiries required to resolve questions of liability, let alone damages. For these reasons and others, centralization conflicts with well-established case law and would create an inefficient and unjust proceeding. However, if the Panel grants the Motion to Transfer, then the Actions should be transferred to the Western District of Pennsylvania, which encompasses Erie's

---

[7] *Table – U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics (Sept. 30, 2019)*, U.S. COURTS, *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/09/30-3.

headquarters, and which has more pending Erie COVID-19 business interruption claims than any other federal district.

Dated: October 6, 2020

/s/ Adam J. Kaiser
_____

Adam J. Kaiser
ALSTON & BIRD, LLP
90 Park Ave,
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

*Attorneys for Defendants Erie Insurance Company, Erie Insurance Exchange, Erie Indemnity Company, Erie Insurance Company of New York, Flagship City Insurance Company, and Erie Insurance Property & Casualty Company*